## Colton's Estate

*Franklin L. Wright* and *Boyd Lee Spahr*, for exceptants.

HOLLAND, P. J., February 29, 1940.—Accountants have excepted to the adjudication upon their first account, filed on July 21, 1939, insofar as credits claimed in the account for disbursements aggregating $3,647.35 for

funeral expenses were reduced to $300 and accountants were surcharged with the excess. The surcharge was imposed because the estate is insolvent, and hence not more than $300 was believed to be properly allowable for funeral expenses.

The inventory value of decedent's personal estate was $303,551.78. In addition decedent owned considerable undeveloped real estate in Lower Merion Township, all of which is security for various mortgages given by decedent and accompanied by his bonds, in principal amounts aggregating $427,985. The account, which is but a partial account, and of personalty only, shows a balance of $78,969.69 principal and $967.67 income, for distribution. Accountants represented at the audit that all unsecured creditors had been paid, and no claims of any such creditors were presented. Claims by the holders of all the bonds accompanying decedent's mortgages were however presented and admitted to be correct. It is possible, and perhaps likely, that the program for the development of decedent's real estate, undertaken by accountants with the coöperation of the mortgagees, will ultimately result in the solvency of the estate as a whole, by selling the real estate and thus liquidating the mortgages secured thereon. Nevertheless, for the purpose of the present accounting the claims on decedent's bonds render the estate insolvent and it must be so considered.

No exceptions to the account were filed by any party interested, whether as creditor or as a potential distributee under the will. Nor did any such person even appear at the audit, much less object to the amount of the funeral expenses. The reduction of the credits claimed therefore was entirely upon the court's own motion and for the reason already stated.

The first question hence is not whether $3,647.35 is a reasonable amount for funeral expenses in this particular estate, considering its insolvency and all the other factors which have a bearing on the determination of that issue. Here the court not only raised that issue but de-

termined it summarily. The first question is more general and fundamental, and goes to the authority of the court to surcharge an accountant to the extent which credits claimed for funeral expenses are believed to be excessive in an insolvent estate, where no party in interest has objected.

The leading case is Stitzel's Estate, 221 Pa. 227 (1908). An executors' account there before the orphans' court showed payment of $4,000 as counsel fees. No exceptions to the account were filed. On his own motion, without notice or hearing, the auditing judge in his adjudication surcharged accountants with $2,500 of the $4,000. At the argument of accountants' exceptions to the adjudication, the court offered them the opportunity of presenting evidence on the subject of the exceptions, which accountants declined to do. The court then appointed an amicus curiæ, allowed him to file exceptions to the account, and compelled accountants to undergo examination by him not only on the subject of the surcharge but on their administration generally. Disregarding requests of the residuary legatees to dismiss the exceptions to the account and confirm it as filed, the court filed a second adjudication, confirming the original surcharge, and also surcharging accountants in addition with their entire compensation and the amount of counsel fees first allowed.

The orphans' court was reversed on appeal and the account was directed to be confirmed. Chief Justice Mitchell, speaking for the Supreme Court, cited the Act of April 14, 1835, P. L. 275, sec. 1, which then was the controlling act on the examination of executors' accounts. It provided that such accounts, "if not excepted to, shall, after due consideration, be confirmed; but if any person interested in the estate shall except to the account", the court shall decide whether the matters contested call for reference. The court held that, in the absence of exceptions by an interested party, the usual practice of confirming the account without further proceedings should have been followed. Further, that "a surcharge of the

kind made in this case for an overpayment of counsel fees is not one that can be made at all by the court without an exception by some interested party before it." It was emphasized that no question of law or public policy was involved, and that the fees came out of the pockets of the residuary legatees who had expressly agreed to the fees.

The Supreme Court, however, pointed out that the duty of the orphans' court "to examine with due consideration" accounts before it, "carries with it the right of the court on its own motion to make inquiries, suggest objections, and call for explanations:" (p. 230).

There are two important distinctions between the situation in Stitzel's Estate, supra, and that in the instant case. First, the Act of 1835, supra, was repealed by the Fiduciaries Act of June 7, 1917, P. L. 447. Section 1 of the former has been not only replaced by section 47(c) of the latter, but, according to the commissioners' notes, has been "altered by confining it to counties having no separate orphans' courts". The section now applicable to the examination of accounts in counties which do have separate orphans' courts is section 47(b), and this contains no such provision directing confirmation "if not excepted to". That provision of the Act of 1835 was carried over only to section 47(c) of the Fiduciaries Act.

Second, this is an insolvent estate. Funeral expenses, like counsel fees, constitute a basically proper charge. Hence the question on the merits here is the same as that in Stitzel's Estate, namely, "of the proper or improper amount paid for a proper charge." Nevertheless, the expenses here come out of the pockets of creditors—creditors who, while they have not excepted, have not expressly consented either, as did the residuary legatees out of whose pockets the fees came in Stitzel's Estate.

The insolvency of an estate places it in a different aspect from a solvent estate in many respects, and the law has long been vigilant to see to it that a man is "just before he is generous". As an insolvent estate this one is unusual in that all unsecured claims have been paid in

full, and the risk of loss has been assumed entirely by the few large mortgage creditors. The more usual situation is that of a large number of claims each for a comparatively small amount. Many are so small that the creditor obviously has not enough at stake to warrant his engaging counsel to protect his interest. Technically he has the right and the opportunity to seek the advice of counsel and to except to the account. But to say to such a creditor that that is his only recourse, and that the court is powerless to aid him unless he does, is in effect to tell him that the price of justice is too high and hence he must take what accountants choose to give him. Although even under Stitzel's Estate the court would, on discovering an apparently unjustifiable item during the course of examining the account "with due consideration," be empowered to "suggest exceptions", this would do the creditor little actual good. He would still be unable to afford that step and the court would be powerless to act without it.

Unless the distinctions above mentioned are justification for modifying the strict rule of Stitzel's Estate in such a case, great hardship, to the point of a denial of justice to countless small creditors in insolvent estates, appears an inevitable result. As a practical matter, there seems no good reason why the accountant in an insolvent estate should not withhold actual payment of at least the apparent excess of the funeral expenses over and above an unquestionable minimum, and submit it as an unpaid claim for allowance at the audit of the account. In that way the question of reasonableness of the amount would be before the court for decision, properly raised, but without imposing on such small creditors the burden of taking the initiative. It would seem that an accountant has the power to control the procedure—what the court may do and what another creditor must do—by declining to act in the way suggested, and instead by paying the funeral expenses in full and taking credit therefor in his account. The desirability of such a situation is open to serious question. Even though there appears to be basis for con-

cluding that the court should have power in insolvent estates to initiate inquiry into the propriety of disbursements for which an accountant claims credit in his account, the principle that an accountant should not be surcharged without notice of an opportunity to be heard still remains. Hence the surcharge now complained of was unjustified and cannot be permitted to stand.

It does not follow, however, that the funeral expenses are approved. They are composed of four items: Bronze metal lined casket, $2,700; cypress box and handles, $100; embalming, etc., $114.48; copper case, transferring remains, other services and expenses, $732.87. Evidence on the subject might conceivably justify such a total, but at first blush it would appear excessive even if the estate were solvent. In Snyder's Estate, 71 Pitts. 628 (1923), the court allowed $3,000 in an estate of $350,000 "but not as a precedent", and pointing out that this was disproportionate to similar items in several larger estates ($11,000 in the $74,000,000 Frick estate; and $2,732 in the $9,000,000 Mullin estate).

In this particular case, with the strong possibility of its ultimate solvency, and with the small general creditors all paid in full, there does not exist the need for vigilance by the court in behalf of parties unable to protect their own interests. Each of the remaining creditors is not only secured, but has a claim sufficiently large to warrant undertaking whatever may be deemed advisable to assure his participation in a fund as large as he may be entitled to share in. Here, therefore, all ends of justice will be served by giving these creditors an opportunity to file exceptions to the items in question.

And now, February 29, 1940, the exceptions of Girard Trust Company, Florence W. Colton, and Robert T. Wilson, executors, to the adjudication upon their first account, are sustained, and the surcharge of $3,647.35 for funeral expenses therein imposed is removed, and the credit of $300 therein allowed for funeral expenses is correspondingly disallowed. The account, as stated, and

the adjudication, as modified by this opinion and decree, are confirmed nisi. Accountants are directed to serve a copy of this decree on each of the unpaid creditors set forth under paragraph $(f)$ of accountants' petition for distribution submitted at the audit, as provided in rule 9, sec. 1, and to file with the clerk a return to such notice as provided in rule 9, sec. 5. If no exceptions to the items of credit claimed in the account for funeral expenses are filed within 10 days after the filing of the return to the notice directed, the account, as stated, and the adjudication, as modified by this opinion and decree, shall become confirmed absolutely as of course.